454

260 P.2d 366

**ABEYTA v. PAVLETICH et al.**

No. 5604.

Supreme Court of New Mexico.

Aug. 13, 1953.

John B. Wright, Raton, Rodey, Dickason, Sloan, Mims & Akin, Albuquerque, for appellants.

J. V. Gallegos, Tucumcari, Herbert B. Gerhart, Raton, for appellee.

McGHEE, Justice.

The appellee was awarded the fifty percent penalty, amounting to $2,430, following the death of her late husband because of the failure of the employer to furnish a safety device in general use in the construction industry as provided by Section 57-907, 1941 Compilation.

The employer, Pavletich, had made an excavation 19 feet deep, which measured 87 feet on the east and west, and 142 feet on the north and south, in which to lay a foundation for a building. Sixty-seven feet of the west wall of the excavation had been shored and cribbed. The remaining 20 feet had not been shored or cribbed, and while decedent was digging a hole in the bottom of the excavation in which a telephone pole was to be placed, the bank caved in, causing his death. The appellants say the telephone pole was to be a part of the cribbing and the shoring, and the digging of the hole was the first step in such work, while the appellee says it was to be used in laying the foundation, at least in part, but we think the purpose for which it was to be used makes little difference under the facts present in this case.

The evidence clearly establishes the fact the excavation was made in clay soil, of a kind which easily caved, with so much water present it was necessary to use a pump for its removal and that the banks were almost vertical. The decedent was sent into this unshored, uncribbed and dangerous place to dig the hole for the pole, and, as above indicated, the bank caved and killed him.

The primary claim of the appellants is there is no substantial evidence to support the findings of the trial court that there were safety devices in general use in the industry which would have prevented the cave-in; second, the workman was actually engaged in installing a safety device at the time he was killed, and, therefore, they cannot be penalized for failure to furnish a safety device; and, third, as there were alternate methods of installing a safety device to prevent caving, no particular device was in general use and, therefore, the penalty clause may not be enforced against them.

■ We will first consider the third ground raised. As we understand appellants' argument, it is if there are two safety devices in use in an industry, and 40 percent of the employers use one kind of device and 40 percent another, with the remaining 20 percent not using any device, a majority has not been mustered for either device; that although they are practically identical when installed and accomplish the same end result, the fact there is a difference in the manner in which they are built and installed prevents a finding there was a safety device in the industry involved here. We reject any such fine-spun argument. An assembled board wall to prevent caving was the end result of different methods used. Some do as the employer in this case—excavate for a distance and then put in cribbing from top to bottom; another method was to build the cribbing as the ditch went down and progressed, while another was to build the cribbing away from the ditch and in-

stall it with the aid of a drag line as the work progressed. The record clearly shows great danger because of the depth of the excavation and the nature of the soil, and the cribbing or shoring lagged so far behind it amounted to non-use so far as the deceased was concerned.

 The second ground urged for reversal is that as the workman was actually engaged in installing the safety device, the employer may not be held liable. In making this contention he overlooks the fact the workman was in a 20-foot section of a highly dangerous ditch, and that there is testimony in the record by a qualified witness that in such a case the cribbing is installed as the digging of the ditch progresses, and that such is the general practice of the industry. If the contention of appellants were correct, an employer could send his men into such a ditch 30, 40, or 50 feet in length, and if he were taking only the first step to install cribbing, as is the case here, he could defeat the penalty clause of the act. The mere starting by the employer to install the safety device, in view of the highly dangerous condition of the 20 feet of uncribbed ditch or excavation, cannot save the appellants here, as indicated above.

When we consider the testimony and the reasonable inferences to be drawn therefrom in the light most favorable to the judgment, we find ample testimony to sustain the findings that there were reasonable safety devices in general use in the industry which, had they been used, would have saved the life of the decedent, and that this use was shown to prevail not only in Raton, where the accident occurred, but in Albuquerque, Roswell, Clovis and other cities in New Mexico.

The judgment will be affirmed and a fee of $600 is awarded the attorneys for the appellee for their services in this Court. It is so ordered.

SADLER, C. J., and COMPTON, LUJAN and SEYMOUR, JJ., concur.